UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANNA M. LITIF, Individually,<br>and in her Capacity as Administratrix of the ESTATE<br>OF LOUIS R. LITIF, and<br>LUANNE LITIF and LEE LITIF,<br>                     Plaintiffs,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION, et al.,<br><br>                     Defendants. | CIVIL ACTION NO.<br>02-11791-RCL |

MEMORANDUM AND ORDER ON MOTIONS OF DEFENDANTS
CONNOLLY, MORRIS, AND SARHATT FOR JUDGMENT
ON THE PLEADINGS BASED ON QUALIFIED IMMUNITY

LINDSAY, District Judge

## I.   INTRODUCTION AND PROCEDURAL HISTORY

This is a suit brought by Anna M. Litif, individually and as administratrix of the Estate of Louis R. Litif (the "Estate"), and by Luanne Litif and Lee Litif[1] against John J. Connolly, Jr., John M. Morris, and Lawrence Sarhatt (the "defendants," all of whom were agents of the Federal Bureau of Investigation (the "FBI") at various times relevant to complaint) and others. The case arises out of the circumstances surrounding the 1980 murder of Louis R. Litif ("Litif"), allegedly at the hands of James J. Bulger, an alleged leader of the Boston area's Winter Hill Gang, an association of individuals engaged in criminal activities. The complaint is in seven counts. In count IV the plaintiffs allege that the purported

---

[1] Anna Litif, the Estate, Luanna Litif, and Lee Litif will be referred to collectively as the "plaintiffs." Anna, Luanna, and Lee Litif will be referred to as the "Litif family members."

involvement of Connolly and Morris in Litif's murder deprived Litif, the Estate, and the Litif family members of their constitutional rights under the First, Fourth, and Fifth amendments of the Constitution of the United States.  The plaintiffs claim that the conduct of Connolly and Morris in this regard is actionable under the rule stated in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  In count V, the plaintiffs assert *Bivens* claims against Morris and Sarhatt for their participation in these alleged constitutional deprivations in their roles as supervisors of other FBI agents.

Before the court is Connolly's motion to dismiss or for judgment on the pleadings on count IV and on the grounds of qualified immunity.[2]  Sarhatt also filed a motion for judgment on the pleadings on count V on the ground of qualified immunity and substantially relied, for support of his motion, on the Consolidated Memorandum of Law in Support of Individual Defendants' Motions to Dismiss or for Judgment on the Pleadings on the Basis of Qualified Immunity filed in *McIntyre v. United States*, C.A. No. 01-10408-RCL (D. Mass. July 3, 2003) (docket no. 308) ("Consolidated Memorandum"), to which he was a signatory.  Morris did not file a formal motion to dismiss the *Litif* plaintiffs' claims against on qualified immunity, but on February 19, 2004,  I granted his motion (docket no. 57) to join the Consolidated Memorandum and will thus consider him to have moved for judgment on the

---

[2]In his motion for judgment on the pleadings, based on qualified immunity, Connolly also moved for judgment on the ground that the claims against him are time-barred. On March 26, 2004, I issued orders denying the motions of Sarhatt and Morris for judgment on the pleadings based on the statute of limitations (docket entry 63). I did not dispose of Connolly's motion in that order, because he had moved for judgment on the pleadings on more than one ground. Nonetheless, my ruling, set forth in the March 26, 2004 order, that the *Bivens* claims in this lawsuit survive a statute of limitations defense on a motion under Rule 12(c) applies to Connolly's motion as well.  Thus, to the extent Connolly moves for judgment on the pleadings on the basis that the claims are time-barred, his motion is DENIED.

pleadings on the ground of qualified immunity.  He is named as a defendant in counts IV and V of the complaint.  On March 31, 2004, I issued an electronic order denying the motion of Sarhatt, to the extent that the plaintiffs claimed Sarhatt deprived Litif of his right under the Fifth Amendment not to be deprived of his life without due process of law, and granting the motion as to the remaining *Bivens* claims against him.  At that time, I did not issue a memorandum setting forth the reasons for that order; nor did I issue orders on the motions of Connolly and Morris concerning qualified immunity.  On September 30, 2004, I issued a memorandum and order in the *McIntyre* case (the "*McIntyre* memorandum and order," docket no. 370), granting in part and denying in part motions of Connolly, Morris, and other former FBI agents for judgment on the pleadings based on qualified immunity.  The reasons set forth in that memorandum and those set forth below explain the basis for my March 30, 2004 order regarding to the motion of Sarhatt for judgment on the pleadings.  For the same reasons, I order that all of the *Bivens* claims against Morris, except for the claims that Morris deprived Litif of his substantive due process right to life, be dismissed, and grant in part and deny in part Connolly's motion to dismiss or for judgment on the pleadings.

## II.  FACTS

The complaint makes the following allegations.

Connolly and Morris learned that Litif was willing to provide the Boston Police with information concerning the criminal activities of Bulger and Flemmi.  Morris, Connolly's direct supervisor at the time, expected that Connolly would alert Bulger and Flemmi that Litif was cooperating with law enforcement authorities, and that he had incriminated Bulger and Flemmi.  Connolly did indeed share this information with Bulger and Flemmi, and, as a result of the disclosure, Bulger and Flemmi murdered

3

Litif on or about April 12, 1980. The plaintiffs allege that Connolly and Morris are responsible for the death of Litif because, by revealing to Bulger and Flemmi that Litif was an informant, "Connolly and Morris tolerated, and in fact encouraged and assisted, Bulger and Flemmi's commission of certain crimes, including murder and obstruction of justice." Compl. ¶ 47.

Morris is also allegedly responsible for the death of Litif because, in violation of his supervisory responsibilities, he "recklessly disregarded, and in fact encouraged and assisted ... the unlawful and inappropriate activities of Connolly, Bulger, and Flemmi." *Id.* ¶ 50. The plaintiffs also seek to hold Sarhatt liable for the death of Litif by virtue of Sarhatt's acts and omissions in his role as the special agent in charge of the Boston Office (or "first in command"), a position he assumed in 1979. *Id.* ¶ 24.[3] Sarhatt is alleged to have breached his supervisory responsibilities in that he "encouraged and assisted ... the unlawful and inappropriate activities of Connolly, Morris, Bulger and Flemmi." *Id.* ¶ 51. Both Morris and Sarhatt are alleged to have "intentionally and recklessly failed to train, supervise and control" their subordinates and also to have "inadequately and improperly monitored, investigated and remediated" the unlawful acts of their subordinates. *Id.* ¶¶ 163, 164. Moreover, Sarhatt is alleged to

---

[3]In his answer to the complaint, Sarhatt admits that "he served as a special agent in charge of the FBI Boston Field Office between June 18, 1980 and August 20, 1982, when he retired." Sarhatt Ans. ¶ 24. He denies, however "that he was associated with the Boston office beginning in 1979 or at anytime after August 20, 1982." *Id.* In *United States v. Salemme*, 91 F. Supp. 2d 141, 202-03 (D. Mass. 1999), *rev'd in part on other grounds in United States v. Flemmi*, 225 F.3d 78 (1st Cir. 2000), *cert. denied,* 531 U.S. 1170 (2001), the court indicated in its findings of fact that Sarhatt became SAC of the FBI Boston office not long before July 24, 1980. While for purposes of Sarhatt's motion for judgment on the pleadings I am required to accept the plaintiffs' version of the facts as true, if Sarhatt is able to establish in subsequent proceedings in this case, that he had no involvement with the FBI Boston office before or at the time of Litif's death, then the *Bivens* claims against him will be dismissed.

have allowed the relationship among Connolly, Morris, Bulger, and Flemmi to continue despite strong evidence that Bulger and Flemmi were involved in violent crimes, that Connolly and Morris were providing confidential law enforcement information to Bulger and Flemmi, and that Connolly and Morris were giving gifts to and receiving bribes from Bulger and Flemmi.  *Id.* ¶ 65.

### III.    DISCUSSION

**A.     The Estate's *Bivens* Claims**

In paragraphs 150, 151, and 160 of count IV of the complaint, the Estate alleges that the involvement of Connolly and Morris in the murder of Litif violated Litif's rights under the First, Fourth, and Fifth amendments.  The Estate asserts similar claims based on supervisory liability against Morris and Sarhatt in count V of the complaint.  Compl. ¶¶ 168, 169, 176.

**1.     Fourth Amendment**

To the extent that the motions of the defendants for judgment on the pleadings are based on qualified immunity, this case is indistinguishable from *McIntyre*.  In that case, the estate of the decedent also brought a claim under the Fourth Amendment based on the government's role in the murder of an informant who had incriminated Bulger and Flemmi.  For the reasons stated in the *McIntyre* memorandum and order, I hold that the murder of Litif was not a Fourth Amendment seizure.

**2.     Fifth Amendment**

As with the Fourth amendment claims of the Estate, the claims of the Estate that the defendants violated Litif's right under the Fifth Amendment to not be deprived of his life without due process of law are indistinguishable from the parallel claims in *McIntyre*.  For the reasons stated in the *McIntyre* memorandum and order, I hold, for purposes of this present motion, that Connolly is not entitled to the

qualified immunity defense with respect to the Estate's claims that Connolly violated the substantive due process right of Litif not be murdered by the government.

In this case, the Estate has also alleged that Morris violated the substantive due process rights of Litif by way of Morris's role in informing Bulger and Flemmi of Litif's informant status. Similarly, Sarhatt and Morris allegedly deprived Litif of his substantive due process right to life by virtue of their failure to fulfill their supervisory responsibilities. The allegations of the Estate against Sarhatt and Morris are indistinguishable from the allegations against Greenleaf and Morris in the *McIntyre* case. For the reasons set forth in the *McIntyre* order as to supervisory agents, I hold that Morris and Sarhatt are not entitled to qualified immunity at this point in the litigation on the claims that Morris and Sarhatt violated the substantive due process rights of Litif.

### 3. First Amendment

The Estate also alleges that Connolly, Morris, and Sarhatt, by their roles in the death of Litif, violated Litif's rights under the First Amendment "to peaceably assemble and to freedom of intimate association." Compl. ¶¶ 150, 168. This claim is without merit. The claim of the Estate for the deprivation of Litif's substantive due process right not to be murdered by the government subsumes claims for other losses of freedom effectuated by his death. Further, as explained in Part III.B, *infra*, a claim for the violation of the right to privacy in familial association cannot stand where the alleged misconduct neither interferes with a private family decision nor is aimed at severing familial relationships.[4]

---

[4] Moreover, if Litif's death had violated his right to privacy in familial association, then the Estate would not be able to maintain a parallel claim under the rubric of substantive due process. *Albright v.*

6

B.      The *Bivens* Claims by the Litif Family Members

In counts IV and V of the complaint, Anna Litif alleges that the defendants violated her Fifth Amendment right to "association, companionship and relationship with her husband, and her right to choose how to conduct her family affairs." Compl. ¶¶ 152, 170. She also alleges that the defendants violated her First Amendment right "to freedom of intimate association, namely with her husband." *Id.* Likewise, Luanna and Lee Litif have alleged that the defendants violated their rights under the First and Fifth amendments to intimate association with and companionship of their father. *Id.* ¶¶ 154, 156, 172, 174. For the reasons stated below, I hold that the Litif family members have not stated a violation of their rights under the First or Fifth amendments because the alleged misconduct of the defendants was neither an attempt to preempt private family decisions nor specifically aimed at severing family relationships.

Although the Litif family members have characterized the murder of Litif as infringements of their rights under the First and Fifth amendments, the analysis of the viability of a claim under either amendment is the same. Whether the right to "intimate association" between family members has its origin in the First or Fifth Amendment is not clear. *Compare Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984) (explaining that the right to "freedom of association" which requires that "choices to enter into and maintain certain intimate human relationships ... be secured against undue intrusions by the State" is a right which "receives protection as a *fundamental element of personal*

---

*Oliver*, 510 U.S. 266, 273 (1994) ("[W]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989))).

*liberty*" (emphasis added)) *with Board of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 545 (1987) (explaining that First Amendment right of association "protects those relationships, *including family relationships*, that presuppose 'deep attachments and commitments to whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life'" (quoting *Roberts v. United States Jaycees*, 468 U.S., at 619-20) (emphasis added)).[5] The First Circuit has not spoken directly to the question of the origin of a right to freedom of intimate association, but, in cases where family members have brought constitutional claims based on the impact of government action on family relationships, the First Circuit has instead spoken of a "familial liberty interest" under the Due Process Clause, *Ortiz v. Burgos*, 807 F.2d 6, 7-8 (1st Cir. 1986), or to a substantive due process right to "familial associational privacy," *Manarite v. City of Springfield*, 957 F.2d 953, 960 (1st Cir. 1992); *Pittsley v. Warish*, 927 F.2d 3, 8 (1st Cir. 1991). I

---

[5]*See also Boy Scouts of America v. Dale*, 530 U.S. 640, 698 n.26 (2000) ("Our cases recognize a substantive due process right 'to enter into and carry on certain intimate or private relationships." (quoting *Rotary Club*, 481 U.S. at 545)); *Anderson v. City of LaVergne*, 371 F.3d 879, 881 (6th Cir. 2004) (characterizing the freedom of association as "a privacy interest derived from the Due Process Clause of the Fourteenth Amendment, but also related to the First Amendment"); *Adler v. Pataki*, 185 F.3d 35, 42 (2d Cir. 1999) ("The source of the intimate association right has not been authoritatively determined."); *Shahar v. Bowers*, 114 F.3d 1097, 1113 n.6 (11th Cir. 1997) ("[T]here exists a split among the circuits as to whether the right of intimate association is a First Amendment or substantive due process right."); *Sanitation & Recycling Indus., Inc. v. City of New York*, 107 F.3d 985, 996 (2d Cir. 1997) (noting that several circuits have held that "the right to intimate association lies not in the First but in the Fourteenth Amendment"); *Griffin v. Strong*, 983 F.2d 1544, 1547 (10th Cir. 1993) ("The freedom of intimate association is a substantive due process right, as is its subset, the familial right of association."); *Marcum v. Catron*, 70 F. Supp. 2d 728, 733 (E.D. Ky. 1999) ("Freedom of intimate association is a hybrid right, drawn from both the First and the Fourteenth Amendments [sic]."); *cf. Montogomery v. Carr*, 101 F.3d 1117, 1131 (6th Cir. 1996) ("[S]tate action impinging on the right to marry is to be reviewed in the same fashion whether advanced on the theory that it violates substantive due process or advanced on the theory that it violates the First Amendment's right to intimate association.").

therefore treat the claims of the each Litif family member under the First and Fifth amendments as a single claim for the violation of the Fifth Amendment substantive due process right to privacy in familial association.

The First Circuit defined the parameters of the right to privacy in familial association in *Ortiz*. The plaintiffs in *Ortiz*--the mother, stepfather, and siblings of a deceased inmate--claimed that the prison guards who allegedly beat the inmate to death had violated the family members' constitutionally protected interest of the family members in the companionship of their adult son and brother. The court treated the claim as one for a violation of the right of privacy in familial association. 807 F.2d at 7-8. In considering whether the plaintiffs had alleged a violation of this right, the First Circuit identified two categories of cases in which the Supreme Court has recognized a fundamental liberty interest in familial relationships. *Id.* at 8. The first category of cases demonstrates that "rather than an absolute right to a certain family relationship, family members have the right, when confronted with the state's attempt to make choices for them, to choose for themselves." *Id.* The family decisions in which the government may not interfere include "whether to procreate, whether to school one's children in religious as well as secular matters, and defining the 'family' with whom one chooses to live." *Id.* (citations omitted). The second category of cases, recognizing a fundamental liberty interest in familial relationships, are those where "the state *seeks* to change or affect the relationship of parent and child in furtherance of a legitimate state interest," or, in other words, "when the government directly acts to sever or otherwise affect [a parent's] legal relationship with a child." *Id.* (emphasis added). Examples of governmental efforts to change a family relationship include the "termination of parental rights, determining paternity, and deciding whether an unwed father may retain custody of his children after their mother's death."

9

*Id.* (citations omitted). The First Circuit concluded that the plaintiffs' claims for the loss of companionship of their brother and son did not fit into either category of cases; the alleged beating was neither an attempt to make a private family decision; nor was it undertaken for the purpose of affecting the familial relationships between the plaintiffs and the inmate.[6] *Id.* Declining to "make the leap ... from the realm of government action directly aimed at the relationship between a parent and a young child to an incidental deprivation of the relationship between appellants," the court upheld the district court's grant of the motion by the defendants for summary judgment. *Id.* at 9.

From the rule in *Ortiz*, several other cases emerged, the one closest to this case being *Manarite*. In *Manarite*, the plaintiff's father committed suicide while he was in protective custody. The plaintiff, a minor, brought a § 1983 claim, alleging that the defendants' failure to prevent her father's suicide violated her right to "familial associational privacy." 957 F.2d at 960. The First Circuit noted that the daughter's claim did not fall within either of the two categories of familial associational privacy recognized by the Supreme Court and identified in *Ortiz*. In failing to prevent the suicide, the defendants were neither interfering with the right to conduct family affairs, nor was the conduct of the defendants "directly aimed at severing or affecting the parent-child relationship." *Id.*[7]

---

[6]*See also McCurdy v. Dodd*, 352 F.3d 829, 830 (3d Cir. 2003) (explaining that any fundamental liberty interest of parents in a relationship with their adult son was not violated when a police officer fatally shot the son because the "the parent-child relationships between [the parents] and their son were not on [the officer]'s mind when he pulled the trigger").

[7]*Robles-Vazquez v. Garcia*, 110 F.3d 204, 206 n.4 (1st Cir. 1997) ("First Circuit case law holds that surviving family members cannot recover in an action brought under § 1983 for deprivation of rights secured by the federal constitution *for their own damages* from the victim's death unless the unconstitutional action was aimed at the familial relationship."); *Soto v. Flores*, 103 F.3d 1056, 1062 (1st Cir. 1997) ("[T]he death of a family member will not ordinarily give those still alive a cognizable

10

The allegations of the Litif family members as to their asserted claim against Connolly, Morris and Sarhatt for violating the right to privacy in familial association are indistinguishable from those of the plaintiffs in *Ortiz* and *Manarite*. Admittedly, the tragic loss the Litif family members have suffered has doubtlessly *impacted* innumerable, if not virtually all, their choices regarding family matters. Nonetheless, this is not a case where the plaintiffs have been "confronted with the state's attempt to make choices for them." *Oritz*, 807 F.2d at 8. Similarly, the plaintiffs have not alleged that the conduct of the agents was undertaken for the specific purpose of depriving the Litif family members of the companionship of their husband or father. In fact, the thrust of the allegations of the Litif family members is that the defendants participated in Litif's murder to preserve and advance their own careers. Thus, I hold that the Litif family members have not stated a claim for a violation of their right to privacy in familial association and GRANT Connolly's motion for judgment on the pleadings on those portions of count IV containing those claims. For the same reasons, I have previously granted Sarhatt's motion for judgment on the pleadings on the claim for violation of the Litif family members' right to

---

due process claim under section 1983.... Here, the defendants' actions, despite the tragic outcome, were not specifically aimed at ending or affecting [the plaintiff]'s relationship with her children."); *Pittsley*, 927 F.2d at 9 ("State action that affects the parental relationship only incidentally, ... even though the deprivation may be permanent, as in the case of unlawful killing by the police, is not sufficient to establish a violation of a[n] identified liberty interest. Therefore, only the person toward whom the state action was directed, and not those incidentally affected, may maintain a § 1983 claim." (citation omitted)); *see also McCurdy*, 352 F.3d at 830 n.7 ("It would, therefore, stretch the concept of due process too far if we were to recognize a constitutional violation based on official actions that were not directed at the parent-child relationship."); *Shaw v. Stroud*, 13 F.3d 792, 804-05 (4th Cir. 1994) (*citing Ortiz*, and refusing to recognize a substantive due process claim arising from the deprivation of the love and support of a family member where governmental action affects the family relationship "only incidentally"); *Harpole v. Arkansas Dept. of Human Servs.*, 820 F.2d 923, 927-28 (8th Cir. 1987) ("We do not believe that the drafters of the Fourteenth Amendment intended to protect from government interference every conceivable family relationship, no matter how far removed.... Protecting familial relationships does not necessarily entail compensating relatives who suffer a loss as a result of wrongful state conduct especially when the loss is an indirect result of that conduct.).

11

familial association.  I now order that those claims against Morris be DISMISSED.

## IV.   CONCLUSION

For reasons stated above, Connolly's motion to dismiss or for judgment on the pleadings is granted in part and denied in part.  This memorandum and order explains my previous ruling granting in part and denying in part Sarhatt's motion for judgment on the pleadings.  I also order the dismissal of the Estate's claim against Morris that he violated Litif's rights under the Fourth Amendment.  I further order that the dismissal of the plaintiffs' claim against Morris that he violated their right of privacy in familial association.

SO ORDERED.

 /s/ REGINALD C. LINDSAY
United States District Judge

DATED: September 30, 2004