```
                     UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS


                                   )
JOHN E. DAVIS AND ROBERT P.        )
DAVIS, IN THEIR CAPACITIES AS      )
ADMINISTRATORS OF THE ESTATE OF    )
DEBRA DAVIS,                       )
                                   )
          Plaintiffs,              )    CIVIL ACTION
                                   )    NO. 02-11911-WGY
          v.                       )
                                   )
UNITED STATES OF AMERICA,          )
                                   )
          Defendant.               )
                                   )    CIVIL ACTION
MARION HUSSEY, INDIVIDUALLY AND    )    NO. 03-10087-WGY
IN HER CAPACITY AS                 )
ADMINISTRATRIX                     )
OF THE ESTATE OF DEBORAH HUSSEY,   )
                                   )
          Plaintiff,               )
                                   )
          v.                       )    CONSOLIDATED ACTION
                                   )    No. 02-11791-WGY
UNITED STATES OF AMERICA,          )
                                   )
                                   )
          Defendant.               )
                                   )
```

MEMORANDUM AND ORDER

YOUNG, D.J.                                      September 24, 2010

**I.    INTRODUCTION**

Following this Court's final judgment in the consolidated actions brought against the United States by the estates of Louis Litif, Debra Davis, and Deborah Hussey, the estates of

Debra Davis ("Davis) and Deborah Hussey ("Hussey") brought motions for sanctions against the United States of America (the "government"), pursuant to the Federal Rules of Civil Procedure 11 and 54(d)(2) and the Equal Access to Justice Act, 28 U.S.C. § 2412(b). As grounds for sanctions, Davis and Hussey allege that the government ignored this Court's orders and committed multiple instances of bad faith conduct throughout the course of litigation.

## II. ANALYSIS

### A. Standard of Law

This Court is given "broad deference" in determining whether sanctions are appropriate. Mullane v. Chambers, 333 F.3d 322, 338 (1st Cir. 2003). It is well established that the American Rule on fee-shifting prohibits the "prevailing party from collecting attorney's fees from the losing party." Dubois v. United States Dep't of Agric., 270 F.3d 77, 80 (1st Cir. 2001). In narrowly defined circumstances, however, the federal courts have the "inherent power to assess attorney's fees against counsel." Chambers v. Nasco, Inc., 501 U.S. 32, 45 (1991) (internal citation omitted). Attorney's fees may be assessed "as a sanction for the willful disobedience of a court order." Id. Another exeption allows a court to "assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Id. at 45-

46 (quoting <u>Alyeska Pipeline Serv. Co.</u> v. <u>Wilderness Soc'y</u>, 421 U.S. 240, 258-59 (1975)).

Due to the potent effect of sanctioning and shifting attorneys' fees, the exceptions "should be used sparingly and reserved for egregious circumstances." <u>Jones</u> v. <u>Winnepesaukee Realty</u>, 990 F.2d 1, 4 (1st Cir. 1993). Where sanctions are appropriate, this Court must "describe the bad faith conduct with sufficient specificity, accompanied by a detailed explanation of the reasons justifying the award." <u>Mullane</u>, 333 F.3d at 338 (quoting <u>Gradmann & Holler GmbH</u> v. <u>Cont'l Lines, S.A.</u>, 679 F.2d 272, 274 (1st Cir. 1982)).

Outside the exceptions described above, Rule 11 of the Federal Rules of Civil Procedure also serves as a mechanism to "permit a court to impose attorney's fees as a sanction for conduct which merely fails to meet a reasonableness standard." <u>Chambers</u>, 501 U.S. at 47. The purpose of Rule 11 is to "protect parties from wasteful, frivolous, and harassing lawsuits." <u>Azubuko</u> v. <u>MBNA Am. Bank</u>, 396 F. Supp. 2d 1, 7 (D. Mass. 2005) (Keeton, J.). Thus, sanctions may be appropriate if a party "submits a pleading for an improper purpose or if the claims within it are frivolous or malicious." <u>Id.</u>

Against this backdrop, the Court turns to the four arguments made for imposing sanctions.

### B. The Government's Conduct Regarding the Disclosure of the DEA-6 Record

The government's conduct regarding the disclosure of Flemmi's DEA-6 record[1] does not rise to a level of bad faith. The government's assertion of the law enforcement privilege was not frivolous.  The privilege is a qualified common law privilege that has been recognized by this Court.  United States v. Lilly, 185 F.R.D. 113, 115 (D. Mass. 1999).  "The purpose of the privilege is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise prevent interference in an investigation."  In re Dep't of Investigation, 856 F.2d 481, 484 (2d Cir. 1988).  At the time the government asserted the privilege, the government was conducting an on-going investigation that culminated in an indictment.  Opp'n Mot. Sanctions at 13.  It is reasonable to conclude that the government invoked the privilege to protect inside information during the investigation.

Davis and Hussey do not complain that the documents at issue were not ultimately disclosed.  See Davis Mem. at 10-11;

---

[1] For more information regarding Flemmi's DEA-6 record, see McIntyre v. United States, No. 01-10408, Order Granting Mot. for Attorneys' Fees, Sept. 24, 2009.

Hussey Mem. at 18-19.  Rather, Davis and Hussey assert only that the government's untimely disclosure of the documents warrants sanctions.  Davis Mem. at 11; Hussey Mem. at 19.

The government's delay in disclosing the DEA-6 documents was not unfounded.  The government rejected the initial request for the documents due to the law enforcement privilege, which was not challenged until a pretrial conference in <u>McIntyre</u> on May 19, 2006.  Opp'n Mot. Sanctions at 13.  At that conference, Judge Lindsay ordered the government to disclose a portion of the documents to the <u>McIntyre</u> plaintiffs.  <u>Id.</u>  The issue was not again raised until April 21, 2009, when the plaintiffs in this action requested an unredacted version of the documents.  <u>Id.</u> at 15.  By that point, the <u>McIntyre</u> court had criticized the government's use of the privilege and subsequently lifted the stay in that case.  As a result, less than a week after the request in this case, the government disclosed the full documents.  <u>Id.</u>  Although, the government's delay could be questioned, this Court cannot say that the government's failure to disclose the DEA-6 documents was baseless.  The government asserted a lawful privilege and after the court rejected the privilege, the government disclosed the documents.  Thus, the government's conduct regarding the disclosure of the DEA-6 documents was not made in bad faith.

**C.   The Government's Denial of Facts Proven at Trial**

Davis and Hussey assert that this Court ought sanction the government because the government denied facts that were proved at trial. It appears that this request for sanctions rests on the premise that the government disobeyed this Court's June 16, 2009 and June 22, 2009 orders and this Court is afforded the right to assess attorneys' fees in the form of sanctions if a party willfully disobeys a court order. Chambers, 501 U.S. at 45.

The government, however, fully complied with this Court's June 16, 2009 and June 22, 2009 orders. This Court ordered the government to "review all the related case orders by Judges Wolf, Lindsay, Stearns, Gertner, Tauro, and Young and mark all those facts the government denies with a D." This Court further ordered that the government submit its response by June 29, 2009. The government filed its response and supporting documents on June 29, 2009. Each of the facts that the government denied were marked with a D. See Notice Compliance, Exs. A-H. Accordingly, this case does not warrant sanctions against the government because the government was in full compliance with this Court's orders.

Davis and Hussey further assert that sanctions are warranted because this Court "admonished the government that sanctions would issue for facts it denies, but which the

6

plaintiffs prove at trial." Davis Mem. at 11-12; Hussey Mem. at 4. Careful review of this Court's June 16, 2009 and June 22, 2009 orders reveals that no such admonishment was made on the record by this Court. Furthermore, administering sanctions is a discretion fully afforded to this Court, and one that ought be used sparingly. Jones, 990 F.2d at 4. This Court finds no justification for granting sanctions where a party fully complies with the exact language of a court order.

> **D. The Government's Discretionary Function Defense**

Davis and Hussey allege that this Court ought impose sanctions against the government for asserting the discretionary function-scope of employment defense. This argument hinges on whether the government presented this defense in bad faith. A party's conduct is vexatious if the actions were "frivolous, unreasonable, or without foundation." Dubois, 270 F.3d at 80 (internal quotation omitted).

The government's discretionary function defense was not applicable to the instant case. Indeed, each District Judge rejected the defense each time the Government raised the defense. See Davis v. United States, 340 F. Supp. 2d 79, 93 (D. Mass. 2004) (Lindsay, J.); see also Limone v. United States, 497 F. Supp. 2d 143, 203 (D. Mass. 2007) (Gertner, J.). The fact that the defense was (1) not successful and (2) asserted multiple times does not mean sanctions are warranted.

Sanctions are warranted under the Federal Rules of Civil Procedure and Title 28 United States Code section 2412(b) only if the conduct was frivolous, improper, or without foundation. Although ultimately unsuccessful, the government's defense was not baseless. The government raised the defense in a limited circumstance on a narrow issue. Moreover, the initial denial of the defense in Davis and Limone were both subject to appeal at the time the government interposed this defense. The government was not utterly without a basis for raising the defense again where the previous rulings could yet be overturned. Even were the facts here to show a greater degree of willful blindness, this Court is inclined to abstain from sanctioning except in the most egregious circumstances. Here, no colorable showing of bad faith exists. Accordingly, this Court does not exercise its discretion to impose sanctions against the government for raising the discretionary function defense.

### E. The Government's Comparative Negligence Defense

Davis and Hussey maintain that the Court ought impose sanctions against the government for its meritless and oppressive comparative negligence defense. Again, Davis and Hussey are arguing that the government's meritless claim was made in bad faith with an intent to harass and embarrass the

decedents' family members.  Davis Mem. at 8-9; Hussey Mem. at 17.

The government asserted that Marion Hussey contributed to the murder of her next of kin because she had a duty to report known violent and criminal acts by Stephen Flemmi.  Hussey Mem. at 16-18.  Likewise, the government argued that Debra Davis and her next of kin had a duty to report Stephen Flemmi to law enforcement and that Debra Davis assumed the risk of her own murder by her relationship with Stephen Flemmi.  Davis Mem. at 7.  The government provided no supporting law for the alleged duty.  This Court has already concluded (1) that the government did not cite "any legal authority in support of this defense and failed to articulate any duty the Plaintiffs violated"; (2) that "no legal duty to report a crime in Massachusetts" exists; and (3) that "the government simply dreamt up a duty of self preservation that the Plaintiffs allegedly breached by fraternizing with known criminals."  Litif v. United States, 682 F. Supp. 2d 60, 82 (D. Mass. 2010).

As the government's comparative negligence defense was unfounded and baseless, this Court can infer from the record that it was made for harassing and embarrassing reasons. During trial, the government supported its supposed comparative negligence defense by arguing, for example:

> Even though, and she'll [Marion Hussey] testify, Flemmi
> molested both of her daughters, involved both of her

>    sons in crime, supported her for over some 30 years in a mansion, a 20 room mansion with a pool, tennis court, cabana. That's all blood money coming to her from Flemmi from his life of crime, and she comes in here says it's not my fault. She protected, nurtured. She washed his clothes after he cut the teeth out of all these people.

See Trial Transcript of July 1, 2009, p. 43.  It is self evident that this completely unsupported argument – and the cognate arguments sullying Debra Davis — was intented to, and did, have a negative and harassing effect upon the Davis and Hussey families, and was further intended unduly to prejudice the fact finder.  The government has admitted that its evidence implying that Marion Hussey knew Flemmi was a violent killer was an "inartful argument during the heat of trial [that] may have led to the comparative negligence defense being misunderstood."  Opp'n Mot. Sanctions at 12.  That's putting it mildly indeed.  This Court holds that the government's comparative negligence defense was made in bad faith and warrants sanctions.

    **F.   Award of Attorney's Fees**

This Court is afforded the "inherent power to assess attorney's fees against counsel."  Chambers, 501 U.S. at 45 (internal quotation omitted).  "A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process."  Id. at 44-45.

Davis and Hussey request sanctions in the form of attorneys' fees for the entire litigation. Davis Mem. at 20; Hussey Mem. at 20. This Court finds such an award unwarranted for the present action. The First Circuit has explained that "when obduracy infects only parts of the trial and not the entire defense, the award is 'only for the unnecessary effort occasioned by the obstinacy.'" Marquis Theatre Corp. V. Condado Mini Cinema, 846 F.2d 86, 94 (1st Cir. 1988) (quoting Wright v. Jackson, 522 F.2d 955, 958 (4th Cir. 1975)). Accordingly, this Court will grant attorneys' fees only in proportion to the bad faith conduct. Compare McIntyre v. United States, No. 01-10408, Order Granting Mot. for Attorneys' Fees, Sept. 24, 2009.

After a review of Davis's and Hussey's attorneys' fees request, it does not appear that the attorneys expended considerable time on the issue of comparative negligence. Therefore, the Court sanctions the United States and awards in each of the Davis and Hussey cases the amount of $5,000.00 as payment for responding to a meritless defense raised with the sole purpose of embarassing the decedents' families.

### III. CONCLUSION

Accordingly, Davis's Motion for Sanctions [ECF No. 201] in Civil Action No. 02-11911 and Hussey's Motion for Sanctions [ECF No. 267] in Civil Action No. 02-11791 are ALLOWED IN PART and DENIED IN PART.

SO ORDERED.

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE
